**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SOMPO JAPAN NIPPONKOA
INSURANCE, INC.,

       Plaintiff,

v.                                  Case No.   3:19-cv-1154-J-34PDB

CSX TRANSPORTATION, INC.,
SAVAGE SERVICES CORPORATION,
and SAVAGE INDUSTRIAL RAIL
SERVICES, INC.,

       Defendants.

_____

CSX TRANSPORTATION, INC.,

       Cross-Plaintiff,

v.

SAVAGE INDUSTRIAL RAIL
SERVICES, INC.,

       Cross-Defendant.

_____

**<u>O R D E R</u>**

      **THIS CAUSE** is before the Court on Defendants, Savage Services Corporation's &

Savage Industrial Rail Services, Inc.'s Motion to Dismiss Count II of Plaintiff's Second

Amended Complaint (Doc. 43; Motion), filed on May 14, 2020.  Plaintiff Sompo Japan

Nipponkoa Insurance, Inc. (Sompo) filed a response in opposition to the Motion on May

28, 2020.  <u>See</u> Plaintiff's Opposition to the Motion of Defendants Savage Services

Corporation and Savage Industrial Rail Services, Inc. to Dismiss the Second Amended

Complaint and/or Transfer the Case (Doc. 44; Response).   With leave of Court, see Order (Doc. 50), Defendants Savage Services Corporation (SSC) and Savage Industrial Rail Services, Inc. (SIRS) (collectively, the Savage Defendants) filed a reply in support of the Motion on June 29, 2020.   See Defendants, Savage Services Corporation's & Savage Industrial Rail Services Inc.'s Reply in Support of Defendants' Motion to Dismiss Count II of Plaintiff's Second Amended Complaint (Doc. 53; Reply).   Accordingly, this matter is ripe for review.

## I.      Procedural History

Sompo initiated this action on October 8, 2019, by filing a two-count Complaint (Doc. 1; Initial Complaint) against CSX Corp., CSX Transportation, Inc., and SSC.   The Court struck the Initial Complaint as an improper shotgun pleading, see Order (Doc. 7), and on October 28, 2019, Sompo filed its First Amended Complaint (Doc. 8; Amended Complaint).   In the Amended Complaint, Sompo asserted a claim for negligence against SSC and CSX Transportation, Inc. (CSXT), as well as a breach of contract claim against CSXT, premised on a February 9, 2016 train collision in Marysville, Ohio.   See Amended Complaint ¶¶ 9, 14, 18-31.   On January 30, 2020, SSC filed a motion to dismiss (Doc. 20) in which it argued, among other things, that: SIRS not SSC is the proper party to this action, the negligence claim is time-barred under Ohio law, and the Court should transfer the matter to Ohio as a more convenient forum.   Sompo opposed the motion to dismiss (Doc. 30), but also sought leave to amend its complaint to name SIRS "as the proper defendant." See Plaintiff's Cross Motion for Leave to Amend its Complaint (Doc. 31), filed March 4, 2020.   The Magistrate Judge granted this request, see Order (Doc. 40), and Sompo filed

a Second Amended Complaint (Doc. 41; Operative Complaint) on April 24, 2020, which is the operative pleading in this action.

In the Operative Complaint, Sompo asserts a claim against CSXT under the Carmack Amendment, 49 U.S.C. § 11706, as well as a claim for negligence against SSC and SIRS. See generally Operative Complaint. As alleged in the Operative Complaint, the collision occurred when a CSXT train was improperly diverted from the main railway to a rail siding at a manufacturing facility where the train collided with an unattended rail car or cars. See Operative Complaint ¶¶ 29-30. Sompo asserts that the Savage Defendants provided rail services at this manufacturing facility on behalf of their client, the facility's owner, and it was someone working in the employ of SSC and/or SIRS who "improperly left a rail switch in an open and/or unlocked position" causing the accident. Id. ¶¶ 25, 29-30.[1] Significantly, the CSXT train involved in the collision was carrying a shipment of auto parts from Honda Motor Co., Ltd. (Honda Motor) to Honda of America Mfg., Inc. (Honda America), which were damaged in the accident. Id. ¶¶ 8, 11-15. As a result, Honda Motor and Honda America, which are insured by Sompo, incurred $4,275,884.17 in losses. Id. ¶ 15. Sompo reimbursed its insureds in this amount and now brings this action as the subrogee and/or assignee of its insureds. Id. ¶ 16. On May 14, 2020, CSXT filed a cross-claim against SSC and SIRS asserting claims of implied indemnity, common law indemnity, and negligence. See Defendant, CSX Transportation, Inc.'s Answer and

---

[1] In the Amended Complaint, Sompo identified this "client" as The Scotts Miracle-Gro Co. and/or the Scotts Company, LLC, located in Marysville, Ohio. See Amended Complaint ¶¶ 8, 14. It is unclear why Sompo removed these identifying details from the Operative Complaint.

Affirmative Defenses to Count One of Plaintiff's Second Amended Complaint and Cross-Claim (Doc. 42; CSXT Cross-Claim).[2]

In the instant Motion, the Savage Defendants raise three primary arguments.   First, the Savage Defendants contend that Sompo's claim against SIRS is due to be dismissed for lack of personal jurisdiction.   Second, the Savage Defendants argue that Sompo's negligence claim should be dismissed as to both SIRS and SSC because it is barred by the applicable statute of limitations.   Third, the Savage Defendants assert in the alternative that the Court should sever Sompo's negligence claim against SSC and SIRS from the remainder of this action and transfer it to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).[3]   The Savage Defendants also filed a similar motion concerning the CSXT Cross-Claim.   See Defendants, Savage Services Corporation's & Savage Industrial Rail Services Inc.'s Motion to Dismiss CSX Transportation, Inc.'s Cross-Claim, or in the Alternative, Motion to Sever and to Transfer to Ohio Pursuant to 28 U.S.C. § 1404(A) (Doc. 49; Cross-Claim Motion).   CSXT responded to the Cross-Claim Motion by filing CSX Transportation, Inc.'s Notice as to Cross-Claim (Doc. 56) in which it states that it "takes no position as to whether the Court possesses personal jurisdiction over SSC and SIRS or whether venue is proper in this District as to Plaintiff's claim against SSC and SIRS."   See CSX Transportation Inc.'s Notice as to Cross-Claim (Doc. 56; CSXT Notice), filed July 17, 2020.   CSXT further states that if the Court determines that it is appropriate to transfer Sompo's claim against SSC and SIRS, then CSXT "does not oppose and

_____

[2] CSXT subsequently voluntarily dismissed its Cross-Claim against SSC.  See Order (Doc. 58), entered July 20, 2020.

[3] The Savage Defendants also contend, in a footnote, that dismissal is warranted because the Operative Complaint "improperly commingles negligence claims against two separate Defendants in violation of Rule 10(b)."  See Motion at 10 n.2.

consents to severance and transfer of its Cross-Claim (Doc. 42) to Ohio." Id. at 1. However, CSXT maintains that Sompo's Carmack Amendment claim against CSXT should remain in this venue. Id. at 2.

For the reasons that follow, the Court finds that it lacks personal jurisdiction over SIRS, and that severance and transfer of Sompo's claim against the Savage Defendants, as well as the CSXT Cross-Claim is warranted under the circumstances. As such, the Court will not address the Savage Defendants' other arguments in support of dismissal.

## II.    Standard of Review

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Federal Rules of Civil Procedure (Rule(s)), the "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" See id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing. See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). However, where the court does not conduct a hearing, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction." Id.

A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. Morris v. SSE,

Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[,]" and "where the evidence presented by the parties' affidavits . . . conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845); see also Mazer, 556 F.3d at 1274 (citing Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations [ ] by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). This construction in favor of the plaintiff is particularly necessary where the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845.

In accordance with this legal framework, the Court will summarize the facts alleged in the Operative Complaint as relevant to personal jurisdiction, and then review the evidence put forth by the parties as to the question of personal jurisdiction, all the while construing the alleged facts and evidence in favor of the non-moving plaintiff, Sompo. Morris, 843 F.2d at 492.

## III.    Relevant Facts

In the Operative Complaint, Sompo includes the following allegations relevant to personal jurisdiction:

> 4. Defendant Savage Services Corporation ("SSC") at all times material to the allegations herein, was and is a corporation organized under the laws of the state of Utah, with an office and principal place of business at 901 W. Legacy Center Way, Midvale, Utah, and is authorized to do and does conduct business in the State of Florida.

5. Defendant Savage Industrial Rail Services, Inc. ("SIRS"), at all times material to the allegations herein, was and is a corporation organized under the laws of the state of Delaware, with an office and principal place of business at 901 W. Legacy Center Way, Midvale, Delaware, with an office and principal place of business at 901 W. Legacy Center Way, Midvale, Utah, and with an office and place of business in this district located on the 200 block of McCloskey Avenue, Lake City, Florida and regularly conducts business in the State of Florida.

6. SSC and SIRS are affiliated companies with common ownership, management, employees, practices, property and holdings, and are engaged in commercial rail services operations throughout North America for third party clients, including railcar switching, loading, unloading transshipment, maintenance, tracking and inventory management.
. . .

10. Venue is proper in this Court in that all defendants have offices and places of business in this district, and this action implicates contract(s) of service applicable to CSX and at least one other party that require all actions to be filed in a court of competent jurisdiction in Jacksonville, Duval County, Florida.
. . .

28. The work of SSC and/or SIRS in and around the said manufacturing facility of their client and on the CSX Rail Lines was subject to and or pursuant to a license or other form of consent or agreement from CSX.

See Operative Complaint ¶¶ 4-6, 10, 28.

In support of its Motion, SIRS submits a declaration from Marc Troy Savage, its Senior Vice President/Group Leader, Transportation, which largely rebuts those allegations.  See Declaration of Savage Industrial Rail Services, Inc. (Doc. 43-1; Savage Decl.) ¶¶ 1-2.  According to Savage, SIRS does not have and has never maintained any corporate offices in Florida, "does not own, occupy, rent, or lease property" in Florida, and does not have any personal property in Florida.  Id. ¶ 9.  Savage maintains that SIRS does not and has never: 1) had any bank accounts, employees, mailboxes, or telephone numbers in Florida, 2) created or published advertising material specifically targeting Florida, or 3) "conducted any business" in Florida.  Id. ¶¶ 10, 12-13.  Savage also states

that SIRS is not licensed to do business in Florida and does not pay taxes in Florida.  Id.

¶ 11.  In addition, Savage states that SIRS "is a separate and distinct entity" from SSC

and "[e]ach company has its own governing board and holds separate meetings of its

governing body."  See Id. ¶¶ 5-6.  Savage asserts that SIRS and SSC make

"independent decisions without the approval of the other, including but not limited to, hiring

decisions," and that each company "maintains separate books and records."  Id. ¶¶ 7-8.

Last, Savage avers that SIRS:

> was a party to the Rail Operations Services Agreement ("Rail Agreement")
> with The Scotts Company LLC that is referenced in the Plaintiff's First
> Amended Complaint.  [SSC] was not a party to the Rail Agreement, and no
> employees of [SSC] would have been involved in any rail switch operations
> alleged in the Plaintiff's complaints and performed under the Rail
> Agreement.

See id. ¶ 14 (internal citations and footnote omitted); see also Rail Agreement (Doc. 36-

1).

In its Response, Sompo attempts to cast doubt on the veracity of the Savage

Declaration.  Sompo questions whether Marc Troy Savage is who he purports to be

because he is not listed among the senior officers or directors of SIRS identified in the

Secretary of State records for Idaho, Louisiana, and Indiana.  See Response at 5-6, Exs.

1-3.  Sompo also quibbles with the wording of the Declaration, suggesting that because

Savage states that he "currently serve[s]" as a Senior Vice President of SIRS, without

stating that he is "actually employed" by SIRS and without identifying when he began to

serve in this role, it is therefore questionable "when he began serving SIRS and by whom

is he really employed."  See id. at 6 n.3.  Sompo also attempts to undermine the

assertions in the Savage Declaration by offering evidence that SIRS is registered to do

business in Indiana, id., Ex. 1, which is purportedly contrary to a statement in the Savage

Declaration that SIRS "does business in Idaho, Iowa, Louisiana, Nevada, Ohio, and Texas . . . ."  See Savage Decl. ¶ 3.

In addition, Sompo presents evidence in support of its unrebutted allegations that SSC and SIRS share the same principal place of business: 901 W. Legacy Center Way, Midvale, Utah.  See Operative Complaint ¶¶ 4-5; Response, Exs. 1-3.  Sompo also directs the Court to a website for "Savage Services" where a "Senior Leadership Team" and "Board of Managers" are listed.  See Response at 7 n.7 (citing www.savageservices.com/senior-leadership).  Sompo correctly observes that some, although certainly not all, of the corporate officers or directors listed for SIRS in the business records referenced above are also identified as part of the "Senior Leadership Team" on the "Savage Services" website.  See id., Exs. 1-3.

As Exhibit 4 to the Response, Sompo submits a "Company Profile" of SIRS obtained from the Dun & Bradstreet website.  See Response, Ex. 4.  This document states, in relevant part, that SIRS "has 6 total employees across all of its locations and generates $476,611 in sales (USD)."  See id. at 3.[4]  Sompo also provides a "Business Information Report Snapshot" for SIRS, obtained from Dun & Bradstreet and dated May 25, 2020. See Response, Ex. 5.  According to this Report, SIRS presents a "moderate-high" credit risk.  Id. at 1.  This same Report notes, however, that "D&B currently has no financial information on file for this company," and in the "Company Overview" leaves blanks under the "Annual Sales" and "Employees" categories.  Id. at 9-10.  Last, Sompo offers

---

[4] The Court notes that when it opens the website link provided for this document, the Company Profile now shows that SIRS has "8 total employees across all of its locations and generates $576,669 in sales (USD)."  See Savage Industrial Rail Services Inc. Company Profile, dun & bradstreet, https://www.dnb.com/business-directory/company-profiles.savage_industrial_rail_services_inc.43afde5f81db9461268541b2ef5f79d7.html (last visited Nov. 2, 2020).  In addition, on the website, the data provided for both the annual revenue and the number of employees are qualified with a signifier that the information is "Modelled."

evidence that SIRS does not appear to have its own internet website, and that when searching for SIRS on publicly available search engines, one is directed to a website for "Savage Services."  <u>See</u> Response, Exs. 6A, 6B, 7.

In the Reply, the Savage Defendants cite to Marc Troy Savage's amended declaration, filed on June 12, 2020, in which he clarifies that while SIRS is registered to do business in Indiana, it "currently does not conduct any business in Indiana."  <u>See</u> Amended Declaration of Savage Industrial Rail Services Inc. (Doc. 49-1; Amended Savage Declaration) ¶ 3.  In addition, Savage explains that SIRS is "wholly owned by Savage Transportation Management Inc. which is wholly owned by Savage Enterprises, LLC."  <u>Id.</u> ¶ 5.  According to Savage, SSC is also wholly owned by Savage Enterprises, LLC.  <u>Id.</u>  Savage further states that SIRS "currently has 120 employees, but none of them have conducted any business on behalf of [SIRS] in the State of Florida."  <u>Id.</u> ¶ 9.  As stated in his initial Declaration, Savage reasserts that SSC was not a party to the Rail Agreement and none of its employees would have been involved in the rail switch operations at issue in the Operative Complaint.  <u>Id.</u> ¶ 14.  In the Amended Declaration, Savage goes further to state that "[o]nly [SIRS] employees would have been involved in the rail switch operations alleged in the First Amended Complaint."  <u>Id.</u>[5]

---

[5] It is unclear why Savage refers to the Amended Complaint rather than the Operative Complaint in this sentence of his Amended Declaration.  It may be that this is because the Amended Complaint more precisely identifies the rail switch operations at issue in this lawsuit, or it could be a scrivener's error. Regardless, both the Amended Complaint and the Operative Complaint are premised on the same February 9, 2016 train collision allegedly caused by a rail switch that was improperly left open or unlocked.

**IV.    Personal Jurisdiction**

   **A.  Applicable Law**

   "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements."  See Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).  "If both Florida law and the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant." Id.  Thus, to determine whether personal jurisdiction exists over SIRS, the Court must engage in a two-part inquiry.  See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004).  First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute."  Id. (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)).  Second, the Court must consider whether exercising personal jurisdiction over SIRS is consistent with "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"  Id. (quoting Sculptchair, Inc., 94 F.3d at 626).  "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant."  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

   Turning to the first prong, Florida's long arm statute – Florida Statutes section 48.193 – confers two types of jurisdiction.  See NW Aircraft Capital Corp. v. Stewart, 842 So. 2d 190, 193-95 (Fla. Dist. Ct. App. 2003).  First, section 48.193(1) lists enumerated

acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts. See Fla. Stat. § 48.193(1). Specifically, as relevant here, the long arm statute permits the exercise of personal jurisdiction where the cause of action arises out of:

> 1. Operating, conducting engaging in, or carrying on a business or business venture in this state or having an office or agency in this state . . .

> 9. Entering into a contract that complies with § 685.102.[6]

Fla. Stat. § 48.193(1)(a)(1.), (9.). In addition, section 48.193(2) "provides that Florida courts may exercise general personal jurisdiction" if the defendant engages in "substantial and not isolated activity in Florida[,]" whether or not the claims asserted actually involve the defendant's activities in Florida. See Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203-04 (11th Cir. 2015) (emphasis in original). The reach of Florida's long-arm statute is a question of Florida law. See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1271 (11th Cir. 2002). Thus, this Court must construe the long-arm statute as would the Florida Supreme Court, and, absent some indication that the Florida Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Florida's intermediate courts. See id.

In addition to the issue of long-arm jurisdiction, the Court must consider whether the exercise of personal jurisdiction over Defendants in this case "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the

---

[6] Subject to certain exceptions, section 685.102 of the Florida Statutes generally provides that a person may maintain an action in this state against a person or entity residing outside the state if the action relates to a contract containing a Florida choice of law provision and "which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state." See Fla. Stat. § 685.102(1).

exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"  Mut. Serv. Ins. Co., 358 F.3d at 1319 (quoting Sculptchair, Inc., 94 F.3d at 626).  A determination of whether exercising personal jurisdiction comports with the requirements of due process also requires a two-part inquiry.  See Sculptchair, Inc., 94 F.3d at 630-31.  First the Court looks to see whether SIRS has sufficient "minimum contacts" with the state of Florida.  See id. at 630.  In Licciardello, the Eleventh Circuit explained that:

> [t]he Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there.  This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.  In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there.

Licciardello, 544 F.3d at 1284 (internal citations omitted).  Second, the Court determines whether the exercise of jurisdiction over the defendant "would offend 'traditional notions of fair play and substantial justice.'" Sculptchair, Inc., 94 F.3d at 630-31 (quoting Robinson, 74 F.3d at 258).  Factors relevant to this inquiry "include 'the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief.'"  See id. at 631 (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987)).

## B. Discussion

Before turning to the merits of the arguments, the Court addresses Sompo's contention, embedded within its Response, that the Court should not dismiss this action for lack of personal jurisdiction "without holding an evidentiary hearing and/or permitting jurisdictional discovery . . . ."  See Response at 9.  Significantly, however, Sompo never filed a motion requesting jurisdictional discovery or otherwise asked the Court to defer

ruling until Sompo had an opportunity to engage in such discovery.   Indeed, Sompo appears to have agreed to a stay of discovery pending resolution of the Motion.   See Joint Motion for Brief Stay of Case Management Deadlines (Doc. 27), filed February 19, 2020; Order (Doc. 28); Clerk's Minutes (Doc. 39), filed April 20, 2020; Order (Doc. 40); see also Local Rule 3.05(c)(2)(B), U.S. Dist. Ct., M.D. Fla. (prohibiting discovery prior to the case management meeting).   Absent a timely and properly raised request, the Court need not delay resolution of the pending Motion to permit jurisdictional discovery.   See Mazer, 556 F.3d at 1280-81; Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.7 (11th Cir. 1999); see also Hinkle v. Cirrus Design Corp., 775 F. App'x 545, 550 (11th Cir. 2019).   In addition, upon review of the evidence presented in this case, the Court finds that an evidentiary hearing is unnecessary to the resolution of the pending Motion.   Accordingly, the Court will proceed to the merits of the arguments.

In the Operative Complaint, Sompo alleges that SIRS has an office in Florida and "regularly conducts business in the State of Florida."   See Operative Complaint ¶ 5. Sompo also contends that SSC conducts business in Florida and that these two entities are "affiliated companies."   Id. ¶¶ 4, 6.   Based on these allegations, Sompo contends that the Florida long arm statute authorizes the exercise of specific jurisdiction over SIRS pursuant to section 48.193(1)(a)(1.) as an entity conducting business in Florida out of which this lawsuit arises, and general jurisdiction over SIRS pursuant to § 48.193(2) because it is engaged in substantial activity in Florida.   See Response at 4-5. Significantly, Sompo does not argue or present any evidence that SIRS itself has sufficient contacts with Florida under either of these theories.   Id. at 6-8.[7]   Indeed, as summarized

---

[7] Notably, such an argument would fail.   Even assuming SIRS has an office in Florida and "regularly conducts business" here as alleged in the Operative Complaint, see Operative Complaint ¶ 5, Sompo fails

above, the Savage Declaration presents unrebutted evidence that SIRS has no contact with Florida whatsoever.  <u>See</u> Savage Decl. ¶¶ 9-13.   Despite these facts, Sompo contends that the requirements of sections 48.193(1)(a)(1.) or 48.193(2) are satisfied because SIRS is the alter ego of its co-Defendant, SSC, which allegedly conducts business in Florida and has not objected to personal jurisdiction in this case.  <u>See</u> Response at 8-9.   Alternatively, Sompo argues that the Court may exercise specific personal jurisdiction over SIRS pursuant to section 48.193(1)(a)(9.) of the Florida long arm statute because SIRS may be subject to a Florida forum selection clause in an as yet unidentified contract.  <u>See</u> Response at 9-10.   Upon review, the Court finds that Sompo fails to meet its burden of establishing that jurisdiction is appropriate under the Florida long arm statute on any of these theories.   As such, the Court need not address whether the Due Process Clause permits jurisdiction.  <u>See</u> <u>Snow v. DirecTV</u>, 450 F.3d 1314, 1319 (11th Cir. 2006); <u>Robinson</u>, 74 F.3d at 256 (explaining that both prongs of the analysis must be satisfied for a federal court to exercise personal jurisdiction over a nonresident defendant).

---

to allege or make any showing that SIRS' purported business activities in Florida are in any way connected to the events giving rise to this lawsuit as required to establish specific jurisdiction under Florida's long arm statute.  <u>See</u> <u>Hinkle</u>, 775 F. App'x at 549-50; <u>Kozial v. Bombardier-Rotax GmbH</u>, 129 F. App'x 543, 546 (11th Cir. 2005).   Moreover, as a Delaware corporation with its principal place of business in Utah, merely having an office in Florida and regularly conducting business here falls far short of what is required to render SIRS "essentially at home" in Florida as is necessary to invoke general jurisdiction.  <u>See</u> <u>BNSF Ry. C. v. Tyrrell</u>, 137 S. Ct. 1549, 1558-59 (2017); <u>Waite v. All Acquisition Corp.</u>, 901 F.3d 1307, 1317-18 (11th Cir. 2018); <u>Carmouche</u>, 789 F.3d at 1204.

### i. Alter Ego[8]

Under the Florida long-arm statute, "a non-resident corporation is not subject to personal jurisdiction simply because a related entity is present in Florida." See Heli Enterprise, Inc. v. Dart Helicopter Servs., LLC, No. 8:11-cv-02077-JDW-AEP, 2012 WL 12909891, at *1 (M.D. Fla. Jan. 12, 2012); see also Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."). Nevertheless, an exception to this rule exists where the related companies are alter egos. See Heli Enter., Inc., 2012 WL 12909891, at *1; Abdo v. Abdo, 263 So. 3d 141, 149 (Fla. 2d Dist. Ct. App. 2018). "'To demonstrate jurisdiction under an alter ego theory, the plaintiff must make sufficient jurisdictional allegations to pierce the corporate veil." Abdo, 263 So. 3d at 149 (quoting Stonepeak Partners, LP v. Tall Tower Capital, LLC, 231 So. 3d 548, 556 (Fla. 2d Dist. Ct. App. 2017)). Under Florida law, to pierce the corporate veil a plaintiff must "establish 'both that the corporation is a mere instrumentality or alter ego of the defendant, and that the defendant engaged in improper conduct in the formation or use of the corporation.'" Noah Techs., Inc. v. Rice, No. 2:14-cv-325-FtM-29DNF, 2014 WL 6473664, at *5 (M.D. Fla. Nov. 18, 2014) (quoting WH Smith, PLC v. Benages & Assocs., 51 So. 3d 577, 581 (Fla. 3d Dist. Ct. App. 2010)); Abdo, 263 So. 3d at 149.

---

[8] Both parties appear to assume that SSC has sufficient contacts with Florida to satisfy the Florida long arm statute under sections 48.193(1)(a)(1.) or 48.193(2), or that regardless, SIRS would be bound by SSC's decision to waive any personal jurisdiction defense if these entities are in fact alter egos. The Court need not address whether these assumptions are legally correct because regardless, Sompo fails to meet its burden of establishing that these entities are alter egos.

Here, the Operative Complaint fails to include sufficient jurisdictional allegations to establish that SIRS and SSC are alter egos.   While Sompo alleges that SSC and SIRS are "affiliated companies with common ownership, management, employees, practices, property, and holdings," it fails to actually assert that these companies are alter egos of each other, and includes <u>no</u> allegations that SIRS or SSC engaged in improper conduct in the formation or use of their separate corporate entities.   As such, Sompo has not met its initial burden of pleading sufficient facts to establish personal jurisdiction under an alter ego theory.   Regardless, even if the bare allegations of the Operative Complaint were sufficient, Sompo has failed to come forward with sufficient evidence to rebut the statements in the Savage Declaration that SIRS and SSC are separate and distinct corporate entities, each with their own governing board, books and records. <u>See</u> Savage Decl. ¶¶ 5-8.   The mere fact that SSC and SIRS share a principal place of business, a website, and some overlap of governing officers is insufficient to pierce the corporate veil. <u>See</u> <u>Sun Trust Bank v. Sun Int'l Hotels, Ltd.</u>, 184 F. Supp. 2d 1246, 1268 (S.D. Fla. 2001); <u>see</u> <u>also</u> <u>MeterLogic, Inc. v. Copier Solutions, Inc.</u>, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000) ("[T]he sharing of a business address and the overlap of officers is insufficient to support a finding that the subsidiaries are the alter ego of their corporate parents.").

Moreover, although Sompo attempts to demonstrate the requisite improper conduct through the Dun & Bradstreet records indicating that SIRS is a credit risk, with minimal revenues and employees, this evidence is also insufficient.   Sompo offers this information without any affidavit or declaration explaining how Dun & Bradstreet generated these "reports," the source of its data, the calculations or models from which these numbers were derived, or their reliability.   Indeed, the "Business Information Report Snapshot" itself

states that Dun & Bradstreet "currently has no financial information on file for this company," and leaves blanks in the "Company Profile" regarding ownership, annual sales and employees.  <u>See</u> Response, Ex. 5 at 9-10.  As such, even drawing all reasonable inferences in Sompo's favor, these bare records have little evidentiary value.  However, even if the Court did give credence to these records, Sompo's evidence is nevertheless insufficient to demonstrate that SIRS is an alter ego of <u>SSC</u>.  In its Response, Sompo asserts that the record in this case "strongly suggest[s]" that SIRS is a "classic empty shell corporation," and then leaps to the conclusion that it therefore "has to be subject to the overwhelming control of SSC."  <u>See</u> Response at 8.  However, even if the Court were to accept the first proposition, Sompo offers no support for the second.  As shown in the Dun & Bradstreet reports, and acknowledged by Sompo, there are "scores of companies" within the Savage family tree.  <u>See</u> Response at 8, Ex. 4 at 4-5, Ex. 5 at 11-15.  Sompo offers no basis for its conclusion that SIRS "has to be" subject to SSC's control as opposed to any one of the myriad other affiliated companies.  Indeed, in his Amended Declaration, Marc Troy Savage explains that SIRS is owned by Savage Transportation Management, Inc., which is wholly owned by Savage Enterprises, LLC.  <u>See</u> Am. Savage Decl. ¶ 5.  Thus, even if Sompo could prove that SIRS is a mere instrumentality of some other entity, Sompo presents no evidence from which the Court could conclude that SSC is that controlling entity.  Accordingly, Sompo has not met its burden of alleging or establishing personal jurisdiction over SIRS based on an alter ego theory.

### ii.    Forum Selection Clause

Pursuant to section 48.193(1)(a)(9.) of Florida's long arm statute, an entity may be subject to specific personal jurisdiction in this state if it has "enter[ed] into a contract that complies with s. 685.102."   Section 685.102 states in pertinent part as follows:

> (1) Notwithstanding any law that limits the right of a person to maintain an action or proceeding, any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a <u>choice of the law of this state</u>, in whole or in part, has been made pursuant to s. 685.101[9] <u>and</u> which contains a provision by which such person or other entity residing or located outside this state <u>agrees to submit to the jurisdiction of the courts of this state</u>.

<u>See</u> Fla. Stat. § 685.102(1) (emphasis added).   Accordingly, to establish specific personal jurisdiction under this provision, the contract at issue must:

> (1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;
> (2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;
> (3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;
> (4) Not violate the United States Constitution; and
> (5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

<u>See</u> <u>Corp. Creations Enterprises LLC v. Brian R. Fons Attorney at Law P.C.</u>, 225 So. 3d 296, 301 (Fla. 4th Dist. Ct. App. 2017).

---

[9] Section 685.101 governs contractual choice of law provisions and, with some exceptions, permits parties to a contract to agree to a Florida choice of law provision, regardless of whether the contract bears any relation to Florida, if the contract involves not less than $250,000, and involves at least one Florida resident or Florida entity.   <u>See</u> Fla. Stat. § 685.101(1).

In the Response, Sompo asserts that the Court can exercise personal jurisdiction over SIRS because SIRS could be "subject to a forum selection provision that would amount to consent to jurisdiction." See Response at 9. Sompo nevertheless admits that "we do not know" whether such an agreement exists. Id. Instead, Sompo attempts to satisfy its burden by relying on the allegation in the Operative Complaint that "'this action implicates contract(s) of service applicable to CSX and at least one other party that require all actions to be filed in a court of competent jurisdiction in Jacksonville, Duval County, Florida.'" See Response at 9 (quoting Operative Complaint ¶ 10). Sompo notes that the Savage Declaration does not "attempt to deny" this allegation. Id.[10]

Once again, Sompo fails to meet its prima facie burden of alleging sufficient facts to support long arm jurisdiction over SIRS. To the extent Sompo relies on its allegation that CSXT and "at least one other party," are subject to a contract or contracts with a Florida forum selection clause, this allegation is far too vague and conclusory to establish a prima facie case of jurisdiction over SIRS pursuant to § 48.193(1)(a)(9.). See Snow, 450 F.3d at 1318 (finding that plaintiff's "vague and conclusory allegations" in the complaint were "insufficient to establish a prima facie case of personal jurisdiction over [defendant]"); Castillo v. Allegro Resort Marketing, 603 F. App'x 913, 916 (11th Cir. 2015) (concluding that plaintiff failed to meet her initial burden because "[h]er conclusory allegations are

---

[10] Sompo also argues that SIRS entered into the Rail Agreement with the Scotts Company in which it agreed to be bound by "governmental and industry standards, rules and regulations," and in which it agreed to "interface with the CSXT," a well-known company "quite publicly headquartered in Jacksonville." See Response at 9-10. It is unclear to what aspect of the long arm jurisdiction analysis Sompo thinks this is relevant. It does not show that SIRS is party to an agreement containing a Florida forum-selection and choice of law clause, as is necessary to invoke jurisdiction under section 48.193(1)(a)(9.). Nor does the fact that SIRS entered into a contract with an Ohio company to provide services in Ohio, one of which was to "interface" with a separate company that operates nationwide but has its headquarters in Florida, support a finding that SIRS was "conducting business" in Florida within the meaning of section 48.193(1)(a)(1.), much less the type of continuous and systematic affiliation that would subject it to general jurisdiction here.

insufficient to establish a prima facie case of jurisdiction as to [defendant]").   Indeed, Sompo concedes in its Response that it "do[es] not know" whether SIRS is subject to any such contract.   See Response at 9.   While Sompo blames this on the "early stages of this case," id. at 9, Sompo made no attempt to obtain jurisdictional discovery to obtain such a contract, if one exists.[11]   Regardless, even if one could infer from the Operative Complaint that SIRS is the "other party" subject to a contract with a Florida forum selection clause, see Operative Complaint ¶ 10, it is still insufficient to satisfy the requirements of section 48.193(1)(a)(9.) because Sompo has not alleged or otherwise shown that this purported contract also contains a Florida choice of law provision as is required pursuant to sections 48.193(1)(a)(9.) and 685.102(1) of the Florida Statutes.   Thus, Sompo has failed to plead allegations sufficient to satisfy the exercise of personal jurisdiction under section 48.193(1)(a)(9.) and therefore has not met its prima facie burden on this theory of long arm jurisdiction either.

Based on the foregoing, the Court finds that it lacks personal jurisdiction over Sompo's claims against SIRS.   In the CSXT Notice, CSXT takes "no position" on whether the Court possesses personal jurisdiction over SIRS and expresses its belief that the issue was "fully briefed" in the Motion, Response and Reply addressed above.   See CSXT Notice at 1.   On this record, the Court finds that it lacks personal jurisdiction over SIRS as to the CSXT Cross-Claim as well.   As an alternative to dismissal without prejudice for lack

---

[11] Based on the allegations of the Operative Complaint, the only entity with which SIRS may have entered such a contract or agreement is CSXT.   See Operative Complaint ¶ 28 ("The work of SSC and/or SIRS in and around the said manufacturing facility of their client and on the CSX Rail Lines was subject to and or pursuant to a license or other form of consent or agreement from CSX.").   But, given that CSXT is making no attempt to enforce a forum selection clause with respect to its Cross-Claim against SIRS, it appears exceedingly unlikely that one exists.   See CSXT Notice ¶ 2 (consenting to the severance and transfer of its Cross-Claim against SIRS to Ohio).

of personal jurisdiction, the Court next considers the Savage Defendants' request that the Court sever the claims against them and transfer those claims to the Southern District of Ohio under 28 U.S.C. § 1404(a).[12]

## V.    Severance and Transfer

### A.  Applicable Law

In the Motion, the Savage Defendants also assert that severance of the claims against them and transfer of those claims to the Southern District of Ohio is appropriate in this case pursuant to 28 U.S.C. § 1404(a).  See Motion at 15.   Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).   The standard for transfer under § 1404(a) gives broad discretion to the trial court.  See Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347,1351 (M.D. Fla. 1999).   The transfer analysis in this case, however, is rendered slightly more complex by the existence of a forum selection clause applicable to some, but not all, of the parties.   Notably, the Third Circuit Court of Appeals addressed a similar situation in In re Howmedica Osteonics Corp., 867 F.3d 390 (3d Cir. 2017), and utilized a four-step framework for conducting the severance and transfer analysis in such cases.  See Howmedica, 867 F.3d at 403-05.   Under the Howmedica framework, courts consider in sequence: "(1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer

---

[12] "A court may consider a motion to transfer even when personal jurisdiction is found lacking over certain defendants."  KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *15 n.12 (M.D. Fla. Jan. 15, 2009).

decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." Id. at 403-04. The Court finds it appropriate and helpful to apply this framework in resolving the severance and transfer issues here. See Clausen v. Burns & Wilcox, LTD, No. 2:19-cv-605-FtM-60NPM, 2020 WL 2425671, at *1-2 (M.D. Fla. May 12, 2020) (noting that the Eleventh Circuit had not addressed this circumstance yet and adopting the Howmedica four-step analysis).

### B. Discussion

#### i. The Forum-Selection Clauses

On the current record, it appears that Sompo's claim against CSXT, set forth in Count I of the Operative Complaint, is subject to a mandatory forum-selection clause contained in the CSX Intermodal Service Directory. See Response, Ex. 8. Specifically, section 9.11(D.) provides that: "All lawsuits for freight loss or damage must be filed in a court of competent jurisdiction in Jacksonville, Duval County, Florida." Id., Ex. 8 at 34. Although Sompo speculates that SSC and SIRS may be subject to some as-yet unidentified forum selection clause as well, it does not argue or present any evidence that SSC and SIRS are bound by any forum-selection clause in an agreement with Sompo or its insureds Honda America and Honda Motor. And, even assuming a forum selection clause in some other contract exists, Sompo presents no authority to suggest that Sompo, as a non-signatory to this unidentified contract, would be entitled to enforce it. See Bahamas Sales Assoc., LLC v. Byers, 701 F.3d 1335, 1342 (11th Cir. 2012) ("Generally, 'one who is not a party to an agreement cannot enforce its terms against one who is a party.'" (quoting Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1167 (11th Cir. 2011))). As such, while the Court will presume that Sompo's claim against CSXT should proceed

in this Court, no such presumption applies to the claims against SSC and SIRS.  See Howmedica, 867 F.3d at 407.  Thus, the Court next analyzes the § 1404(a) public and private interest factors as relevant to the claims against SSC and SIRS.  See Howmedica, 867 F.3d at 404; see also In re Rolls Royce Corp., 775 F.3d 671, 681 (5th Cir. 2014).

> ### ii.        § 1404(a) Analysis

In considering whether to transfer a case pursuant to § 1404(a), in the absence of consent among the parties, the district court must engage in a two-step inquiry.  See 28 U.S.C. § 1404(a); Eye Care Int'l, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000); Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).  The court must first determine, as a threshold matter, whether the case could have been filed in the proposed district.  See Bookworld Trade v. Daughters of St. Paul, Inc., 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006); see also Colo. Boxed Beef Co. v. Coggins, No. 8:07-cv-00223-T-24-MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007).  Next, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice."  Eye Care Int'l, Inc., 119 F. Supp. 2d at 1318; see also Bookworld Trade, 2006 WL 3333718, at *1.  In making this determination, the court evaluates a number of factors.  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

As to the first step, the Court finds that Sompo could have brought its negligence claim against SSC and SIRS in the Southern District of Ohio where the train collision giving rise to this action occurred, and both SSC and SIRS concede they are amendable to service of process in that jurisdiction.  See Motion at 18 & n.3.[13]  Thus, the Court turns to

---

[13]  Sompo argues that it could not have brought this action in the Southern District of Ohio "as constituted," because of the forum selection clause governing its claim against CSXT.  See Response at 14-15.  Be that

the second step of the analysis. As to this step, the Eleventh Circuit Court of Appeals has

identified nine factors to consider in determining whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents
> and the relative ease of access to sources of proof; (3) the convenience of
> the parties; (4) the locus of operative facts; (5) the availability of process to
> compel the attendance of unwilling witnesses; (6) the relative means of the
> parties; (7) a forum's familiarity with the governing law; (8) the weight
> accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests
> of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). No single factor is

dispositive, although some factors carry more weight than others. See Summers-Wood

L.P. v. Wolf, No. 3:08-cv-60/RV/MD, 2008 WL 2229529, at *2 (N.D. Fla. May 23, 2008).

It is the movant's burden to establish that a case should be transferred to the

suggested forum in the interests of convenience and justice.   See In re Ricoh Corp., 870

F.2d 570, 573 (11th Cir. 1989) ("[T]he burden is on the movant to establish that the

suggested forum is more convenient."); Colo. Boxed Beef Co., 2007 WL 917302, at *3.

Moreover, "[i]n determining the propriety of transfer, the Court must give considerable

weight to Plaintiff's choice of forum.   Only if the Plaintiff's choice is clearly outweighed by

considerations of convenience, cost, judicial economy, and expeditious discovery and trial

process should this Court disregard the choice of forum and transfer the action."

Response Reward Sys., L.C. v. Meijer, Inc., 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002)

(internal citations omitted); see also In re Ricoh Corp., 870 F.2d at 573 ("[F]ederal courts

traditionally have accorded a plaintiff's choice of forum considerable deference.");

---

as it may, the question before the Court on this step of the analysis is whether Sompo could have filed its
negligence claim against SSC and SIRS in Ohio, and Sompo offers no reason why it could not have initiated
a separate action in Ohio against SSC and SIRS.

Robinson, 74 F.3d at 260 ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").[14]

A significant factor under § 1404(a) is the convenience of witnesses, "and the moving party must make a specific showing of inconvenience to witnesses to succeed in requesting a venue transfer." Laica-Bhoge v. Eli Lilly & Co., No. 6:14-CV-1286, 2015 WL 3919515, at *5 (M.D. Fla. June 25, 2015) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989) (internal quotations omitted)). Notably, neither party has submitted a comprehensive list of proposed witnesses. "[A] general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be," does not merit transfer. Laica-Bhoge, 2015 WL 3919515 at *5 (quoting J.I. Kislak Mortg. Corp. v. Connecticut Bank and Trust Co., 604 F. Supp. 346, 347 (S.D. Fla. 1985)). This is so because, in analyzing the convenience to non-party witnesses, the Court must determine whether a witness is 'key.' See Mason, 146 F. Supp. 2d at 1361-62. A witness is key if his or her testimony is likely to be significant enough that the witness' presence would be necessary at trial. See id. Additionally, in the case of employee witnesses, "their convenience is entitled to less weight because [the parties] will be able to compel their testimony at trial." Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010).

---

[14] 28 U.S.C. § 1404(a) was amended in 2011 to permit transfer "to any district or division to which all parties have consented." While these cases were decided prior to this amendment, the analysis of § 1404(a)'s convenience and public interest factors remains applicable.

Here, the Savage Defendants broadly contend that "all of the individuals that witnessed and/or were involved in the subject accident are most likely located in Ohio . . . ." See Motion at 17. However, these Defendants have made no effort to identify, even generally, who those witnesses are, the importance of their testimony, or where they are currently located. The Court has no way of knowing whether the individuals who witnessed the collision on February 9, 2016, are still located in Ohio at present, over four and a half years later. Moreover, it appears likely that some of these potential witnesses could be employees of either SSC, SIRS or CSXT, such that their convenience is entitled to less weight. Nevertheless, Sompo does not address whether the key witnesses are located in Ohio and makes no effort to identify any witnesses that are located in Florida. See Response at 16. Thus, the Court views this factor as leaning very slightly in favor of Ohio.[15]

Modern technology has reduced the importance of the location of relevant documents and the relative ease of access to sources of proof. See Trinity Christian Ctr. of Santa Ana, Inc., 761 F. Supp. 2d at 1327. Nevertheless, in this case, physical evidence related to the accident, such as the railway line and subject rail switch, are located in Ohio. Indeed, the locus of operative facts in this case is plainly Ohio as it is undisputed that the accident at issue occurred there. As such, these factors weigh in favor of transfer.

As to the forum's familiarity with the governing law, the Court notes that the parties do not agree on what law will govern Sompo's negligence claims. The Savage Defendants maintain that Ohio law applies to this dispute, see Motion at 10, while Sompo

---

[15] Because the parties do not provide the actual identity or location of any witnesses, the Court is unable to determine whether the availability of process to compel the attendance at trial of unwilling witnesses weighs for or against transfer.

points to certain federal regulations which may apply and speculates that the Savage Defendants may be subject to an as yet unidentified contractual choice of law provision. See Response at 12-13.   However, even if Ohio law is inapplicable as Sompo contends, Sompo offers no evidence to support a finding that Florida law will apply to this action such that this factor, at the least, is neutral.

Neither party addresses whether the convenience or relative means of the parties weigh in favor of one forum or another.   Indeed, these factors appear neutral as neither party is principally located in Florida or Ohio.   Nevertheless, the Court acknowledges that a plaintiff's choice of forum is given considerable deference such that it should be disregarded only where that choice is "clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process." Response Reward Sys., L.C., 189 F. Supp. 2d at 1339 (internal citations omitted); see also Ricoh Corp., 870 F.2d at 573 ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference."); Robinson, 74 F.3d at 260 ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").

Although consideration of the above factors alone might not outweigh the deference given Sompo's choice of forum, the Court finds that the interests of justice and trial efficiency make severance and transfer of the claims against the Savage Defendants appropriate in this case.   As stated above, the Court lacks personal jurisdiction over SIRS, such that, absent transfer, the Court will be obligated to dismiss Sompo's claim and the CSX Cross-Claim against SIRS without prejudice, and address the merits of the remaining negligence claim against SSC.[16]   This manner of proceeding would virtually ensure that

---

[16]  As noted above, CSXT previously dismissed its Cross-Claim against SSC.

identical claims against related corporate entities regarding the same underlying incident will be litigated in two separate courts, thousands of miles apart. Whereas transfer of all claims against <u>both</u> of these related entities avoids these extremely inefficient results and is plainly in the interests of both the public and all parties involved. Because the "Step One" presumption that Sompo's Carmack Amendment claim against CSXT remain in this Court, is in conflict with the "Step Two" analysis which weighs in favor of transferring Sompo's negligence claims against the Savage Defendants, as well as the CSXT Cross-Claim against SIRS, the Court must next assess whether severance is warranted. <u>See</u> <u>Howmedica</u>, 867 F.3d at 408.

### iii. Threshold Issues Related to Severance

On this step of the analysis, the <u>Howmedica</u> court explains that "[i]n some cases, severance clearly will be warranted to preserve federal diversity jurisdiction; <u>to cure</u> <u>personal jurisdiction</u>, venue, or joinder defects; or to allow for subsequent impleader under [Rule] 14. In such cases, the court should sever and transfer claims as appropriate to remedy jurisdictional and procedural defects." <u>See id.</u> at 404 (emphasis added) (internal footnote omitted). Here, as reasoned above, the Court lacks personal jurisdiction over SIRS and as such, cannot retain jurisdiction over Sompo's claim or the CSXT Cross-Claim against SIRS. Thus, "at least those claims should be transferred to the [Southern District of Ohio], where personal jurisdiction over [SIRS] is proper." <u>See</u> <u>Howmedica</u>, 867 F.3d at 409.

### iv. Efficiency and Non-Contracting Parties' Private Interests

The first three steps of the analysis present the Court with the same three options identified in <u>Howmedica</u>: sever and transfer only the negligence claim and CSXT Cross-

Claim against SIRS, sever and transfer the negligence claim against SSC along with the negligence claim and Cross-Claim against SIRS, or transfer the entire case, including the Carmack claim subject to a forum-selection clause.  See Howmedica, 867 F.3d at 409. As stated in Howmedica, "[t]o select among these options at Step Four, [the Court] is guided by considerations of efficiency, the non-contracting parties' private interests, and Atlantic Marine's directive that 'courts should not . . . disrupt the parties' settled expectations' embodied in forum-selection clauses except when other factors 'overwhelmingly' weigh against enforcing the clauses."  Id. (internal citation omitted) (quoting Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 66-67 (2013)).

Here, as in Howmedica, the interests of efficiency favor the severance and transfer of Sompo's negligence claim against SSC along with the negligence claim and CSXT's Cross-Claim against SIRS because these are related entities, charged with the same negligent conduct, and thus these identical issues should be litigated in the same forum. Id. at 409.  However, also as in Howmedica, the interests of efficiency do not outweigh the presumption in favor of enforcing the forum selection clause as to Sompo's claim against CSXT.   While severance and transfer of the negligence claims and CSXT's Cross-Claim creates the risk of duplicative litigation as to the remaining Carmack claim against CSXT, "that risk can be reduced or eliminated with 'procedural mechanisms . . . such as common pre-trial procedures, video depositions, stipulations, etc.' . . . ."  Id. at 409-10 (quoting Rolls Royce, 775 F.3d at 681).   And indeed, none of the parties have asserted that transfer of the entirety of this action to the Southern District of Ohio is warranted. Thus, the Court will exercise its discretion to sever and transfer the claim and cross-claims

against SIRS and SSC as this outcome promotes efficient resolution of the claims against those entities, accounts for the relevant private and public interests, and resolves the personal jurisdiction defect, while allowing for the enforcement of the forum-selection clause applicable to the other parties.   In accordance with the foregoing, it is

**ORDERED:**

1. Defendants, Savage Services Corporation's & Savage Industrial Rail Services, Inc.'s Motion to Dismiss Count II of Plaintiff's Second Amended Complaint (Doc. 43) and Defendants, Savage Services Corporation's & Savage Industrial Rail Services Inc.'s Motion to Dismiss CSX Transportation, Inc.'s Cross-Claim, or in the Alternative, Motion to Sever and to Transfer to Ohio Pursuant to 28 U.S.C. § 1404(A) (Doc. 49) are **GRANTED, in part, and DENIED without prejudice, in part**.

   A.   The Motions are **GRANTED** to the extent the Court will sever Sompo's claim against SSC and SIRS, and the CSXT Cross-Claim against SIRS, from the remainder of this action and direct the Clerk of the Court to transfer those matters to the Southern District of Ohio.

   B. The Motions are otherwise **DENIED without prejudice**.

2. The Clerk of the Court is directed to **SEVER** Count Two of the Second Amended Complaint (Doc. 41 at 6-9) and the entirety of the CSXT Cross-Claim (Doc. 42 at 8-11) from the remainder of this action and **TRANSFER** those matters to the Southern District of Ohio.

3. The stay in this matter is **LIFTED**.

4. On or before **December 18, 2020**, the parties remaining in this action shall confer and file a case management report in accordance with the Local Rules of this Court.

**DONE AND ORDERED** in Jacksonville, Florida this 3rd day of December, 2020.

**MARCIA MORALES HOWARD**
United States District Judge

lc11

Copies to:

Counsel of Record